Good morning, Your Honors. May it please the Court, Kenneth Lee appearing on behalf of Appellant Justice Concrete. The central issue in this case, Your Honors, is whether the First Amendment complaint was properly dismissed with prejudice and without leave to amend under 12b-6, and the particular counts at issue are counts 1, 2, and 7. Okay, let me ask you this just so I make sure I got my feet under me procedurally. You made no motion to file an amended complaint after this dismissal? That is correct, Your Honor. Does that mean, then, that we're addressing the adequacy of the complaint that was dismissed? That is correct. And the issue, obviously, of whether or not leave to amend should have been given. No, no. Say that. Give me that last half sentence again. As to the propriety of not granting leave to amend. But you never moved to amend. That's correct, Your Honor. In your opposition to the motion to dismiss, did you suggest in the – in your opposition that you would want leave to amend? I believe we did, Your Honor. Well, either you did or you didn't. Yes, Your Honor. As I recall the record, I did. Yes. Well, there's a very short paragraph at the end of the summary – at the end of your opposition papers where you talk about amending, but it's a little short of saying I would like leave to amend. I'm trying to figure out whether we're dealing with just you elected to stand on your complaint or whether you're saying, if I were permitted to amend, I could properly plead what you now say is in counts 1, 2, and 7. I believe, Your Honor, we did ask to re-plead. You did ask in a general way. It says, to the extent this Court determines that plaintiff's first amended complaint has pleading deficiencies, this is the first time plaintiff has been put on notice thereof, and it cannot be said that amendment would be futile, justifying dismissal with prejudice, it doesn't specify what you would want to amend, but that's pretty much the extent of the request. Does the District of Arizona have a local rule that requires a motion to amend? I'm not aware of one, Your Honor. Okay. Okay. So we'll hear what the other side has to say about whether a motion for leave to amend was required or whether we're simply stuck with standing on the complaint. Okay. Understood, Your Honor. Turning now to the first count, and as to that first count, we believe that the central question is whether or not leave to amend should have been granted. Now, admittedly, Your Honors, the count did not clearly allege the issue of the defendant having requested price modifications to apply retroactively to work that had already been completed by the plaintiff. But in the district court ruling, the district court judge did say and pretty much laid out what was lacking in the pleading, and by virtue of having done that, that is the court essentially establishing that leave to amend would have, in fact, cured any defect as to Rule 12b-6. Once that leave to amend could have been or would have been granted, we believe any defect would have been cured and, therefore, dismissal would not have been. What would you allege? We would have alleged facts, Your Honor, that would have clarified, as I said, the timing of everything. So they were seeking to apply the modification to prior. Retroactively. Retroactively to work already completed. That's correct, Your Honor, and therefore placing at issue the matter of consideration. Yes. Well, you might already have alleged it. I'm reading your paragraph 131 on count 1 on the complaint that was dismissed. They've been damaged due to the difference between the amount tendered for their completed work. Paragraph 130, tender of the balance is due and owing. I mean, it seems to me that it's at least possible to read the complaint as pled to include in count 1 not only damages for modifications to which you perhaps consented by continuing to work, but there are allegations in here with respect to work that already has been completed. And that is another aspect of our argument, Your Honor, that even the complaint on its own, as you just pointed out, could be interpreted to properly allege and place at issue the issue of the timing of the modification as well as consideration. And it is our position that in dismissing this complaint, the district judge respectfully disagree with our decision because she did not read the complaint in a light most favorable to the plaintiff. Now, I know in the briefings, Your Honors, there was a multitude of discussion about the law of consideration and contract, so on and so forth. I respectfully submit that that type of inquiry is not what should be happening at this level. The fact that there was that amount of discussion of that nature is further evidence, in our view, that the dismissal of count 1 and dismissal without leave to amend was improper because those are all factual issues that the complaint placed at issue. The other aspect of count 1 was the issue of the presumption of Arizona Statute 44-121 about the importation of consideration. And this kind of bleeds over into the aspect of not reading the complaint in a light most favorable to the plaintiff. The district court concluded that the contract at issue was written, and by virtue of that assumption, that consideration had to be imported automatically by operation of law. But once again, when one reads the complaint, there was no specific allegation and no specific statement by the plaintiff that it signed any of the modifications at issue. And therefore, the district court judge simply made the assumption that it was written and did not read the complaint in a light most favorable to the plaintiff. And we believe that that basis used by the district court judge to come to a conclusion to dismiss this complaint was improper as well. As to count 2, the issue of wrongful termination, dismissal of that count was also improper because the plaintiffs actually did plead sufficient facts to state a claim of implied covenant, a breach of implied covenant of good faith by the defendants. I know much has been made about the issue that the plaintiffs did not raise this in their district court pleadings. However, it's our position that this Court is free in its discretion to consider this issue because there is no prejudice to the defendants. They've had the opportunity to fully brief this issue through the appellate briefings. Additionally, the whole concept of breach of the covenant of good faith was inserted into the First Amendment complaint, and the plaintiff and the defendants were placed on notice. I assume that if you had leave to amend, you would just clarify the complaint in this aspect of the case? That is also the next aspect of our position, Your Honor, is absolutely we would clarify that. So there would be a specific point. Well, I mean, if I read the complaint sympathetically and perhaps slightly creatively, the first paragraph of count 2, paragraph 136, says, Plaintiff repeats and realleges each and every allegation contained above as fully set forth herein. Well, paragraph 1, the very lead paragraph in the complaint, damages stemming from defendant's systematic and bad faith breaches of the MSAs. So, I mean, you've got bad faith pled right there in paragraph 1 of count 2, incorporating by reference to paragraph 1. I mean, there it is. And that's exactly our positioning, Your Honor. And that's the basis for our position that it was improper for the district judge to have dismissed the complaint. So it's not very hard to read bad faith into count 2. It's just it's incorporated by reference in the first sentence of count 2. And we agree, Your Honor. Now, as to the final count, count 7, the alter ego complaint, I know that the district judge did not reach that issue because, according to her analysis, she had already found counts 1 and 2 lacking and, therefore, did not reach the issue because there was no issues of liability, in her view, to consider. We would, once again, as the plaintiff, assert that this Court has the discretion to consider an issue, a matter that was not considered by the district court. And when looking at the manner in which the plaintiff pled count 7, the whole alter ego complaint, the plaintiff did provide multiple allegations as to the factors that are relevant to alter ego, and, therefore, it should not be dismissed. I see that I have five minutes remaining. I would like to reserve that. Unless you have a question, Your Honor. I don't believe we do at the moment. Thank you. Thank you. I'll hear from Mr. Schaffer. Good morning, Your Honors. May it please the Court. Bob Schaffer, Elizabeth Rothgerber on behalf of MDC Holdings and the Richmond American Defendants. Your Honor, this bill really presents two issues. One is for the claims that were pled in the First Amendment complaint properly rather than seeking leave or seeking to reopen the judgment to file an amended complaint. Can the plaintiff posit entirely new and inconsistent theories on appeal that were not raised in the complaint below, were not presented to Judge Bolton, and that, even if the Court reaches them, it would be pointless to remand the case because they're clearly do not state a viable, legally viable claim for relief. Is there a requirement either in the Federal Rules of Procedure generally or a requirement in the local rules in Arizona or a specific requirement in the court of this district judge that in order for this question of leave to amend to be presented to us, that leave to amend had to be specifically sought in a separate motion as distinct from this last paragraph in the opposition? There is not a local rule that requires a leave to amend. What the general practice is, is that if the district court thinks that an amendment can or could possibly say, then the court will say that in its dismissal order. Here, Judge Bolton didn't deny leave to amend. She didn't grant leave to amend. She simply dismissed the claim. But she dismissed it with prejudice, right? Well, the clerk entered judgment as a matter of course because no motion for a leave to amend had been filed and because this was an amended complaint. So there was no right to complain. Well, but this was the question. It is a first amended complaint, but this was the first complaint to which an opposition had been filed. So this in operative terms really looks to me like the first complaint. Well, it was a first amended complaint under the rules in the sense that the plaintiff had no automatic right to replete. If it wanted to replete, it needed to advise the trial court that it wanted to replete, either by way of motion or by plea. But that begs the question, in what form were they required to do that? Because that one statement at the end of the opposition said basically, if this isn't sufficient, we would like the opportunity to replete. It didn't attach a pleading or anything, but that's where I think the questions are getting at, which are, is that enough to signal to the district court that leave was being sought to amend? Well, I think that's the precise question. I think the question really is, did the plaintiff here do enough to advise the trial court that it wished for leave to amend? And your answer is what? It did not. Why? Because this statement on page 17 of the response brief says, to the extent the court determines that plaintiff's first amended complaint has pleading deficiencies, this is the first time plaintiff has been put on notice thereof, and it cannot be said that amendment would be futile, justifying dismissal with prejudice. We had asked for dismissal with prejudice in our motion and in our reply, and we argued that an amendment could not save the complaint. So what the plaintiff then said here was it sort of made this boilerplate statement, but it never gave the trial court any indication of what it would plead. Was there an oral hearing on the motion to dismiss? There was. At the oral hearing, was there any discussion about leave to amend? The only – there was not discussion about leave to amend. There was discussion about the issue of whether the complaint alleged retroactive price in – price adjustments. So what is your response to Judge Fletcher's earlier observation concerning the possibility of interpreting this complaint already to allege retroactive changes in – in compensation? Well, first – the first point on that, Your Honor, is that the plaintiff itself recognized that the complaint did not plead retroactive price changes. I believe that was explicit in the transcript with Judge Bolden. It's certainly explicit in the briefing on appeal. And the reason why they acknowledge that is because, although there is paragraph 131, as Judge Fletcher noted, there's also paragraphs – And the preceding paragraph. Paragraphs. Yeah. But there's also paragraphs 124 through 128, which when – when read in the context of the allegation shows that the plaintiff received standardized e-mails proposing decreased prices for – it doesn't say whether it's past or future. It just says decreased prices. It says, paragraph 125, plaintiff and the class completed the work under their MSAs, which clearly suggests that what they were doing was completing future work based on the – based on the new prices. Well, you know, that's a broad statement. In fact, as I was reading the complaint, and I had not yet gotten to paragraphs 130 and 131, I read paragraph 125, which states, plaintiff and class members completed their work under the MSAs. I wrote on the margin when. Turns out they – if you read a little further, they had already completed some, and then they completed some more. But – And as to the work that they've already completed, if that is some certain capable of ascertainment and liquidatable, I think under Arizona law they've got a cause of action. Well, no, they don't. But let me first try to slip in that this brings us back to whether they needed to do something more to seek an amendment, because Judge Bolton clearly said that they had not pled past questions. Yes, but we're here to determine whether that's right or wrong. And if it's wrong, why is – why is it not a viable claim under Arizona law? Well, it – Let me just phrase that differently. Under Arizona law, is it permissible to retroactively change the terms of a contractual compensation package? Absolutely. It happens all the time. It specifically happens in this industry every day. And the reason why it's allowed is because consideration is provided by the mutual adjustment of benefits and – Retroactively? Absolutely. Absolutely. So if I – if I come to work for $20 an hour and I work for a week, at the end of the week you can say under Arizona law, you know, I think I'm only going to pay you $15 an hour for the work that you did last week. Is that allowed? When the context is that we have – Is that a yes or no question? The answer is yes. The answer is yes. Okay. Remind me never to move or work in Arizona. Well, I don't mean to suggest that in the employment context that an employer could get away with that. What I do mean to suggest is context specific. If that's all the hypothetical were, then sure, no, you couldn't do that because there wouldn't be consideration. But you have to look at the context. The context here is we've got, by the plaintiff's own admission, we've got the worst collapsing real estate market. We've got home builders that have been building 5,000 homes that are now real estate. You know, this sounds a lot like a jury argument. Well, it's not. And that may be where that belongs. It's not, Your Honor, because it shows that the plaintiff itself pled consideration. The plaintiff pled forbearance. And that's exactly what the complaint alleges. The complaint alleges a process, a scheme, according to the plaintiff, whereby Richmond American proposed price decreases for work, whether it's past work or future work. We'll assume it's past work. But it makes a difference if it's past or future. And under my hypothetical, if you come to me at the end of the week and say, here's your $20 an hour for last week, but, you know, I'm really suffering, so next week you only get $15, then if I continue to work, it makes sense that I've agreed to the $15. But the retroactive seems quite different to me. Well, it's not different because the alternative is there would need to be a reduction in the number of contractors because there's a reduction in the number of houses being built. So in exchange for accepting reduced prices, what the contractor gets is continued employment by the home builder. So when you have a market that goes from 5,000 homes a year being built to 1,000 homes a year being built, you don't need the same number of contractors. So there's going to be a reduction in contractors. Well, you know, I don't think that's the law that Judge Bolton was relying on. It may be that that's the law in Arizona. I don't think it is under Gregg. But before we get to that point, I'd like Judge Bolton to say that that's what the law is in Arizona because I don't think she read the complaint as saying, listen, there are two pieces of work. One that was completed due and owing. That wasn't paid for at the contractual rate. And then there's more work that was done after the letter was sent. And that can be modified. I think she said, listen, this all comes under the due and owing, all comes under prospective. So I'd like to wait for her to say that that's Arizona law. I don't think it is, but I think she hasn't ruled on that. Well, she has not ruled on it. She only dealt with the future work. And she dealt with that because these modifications were performed, accepted and paid for. And so that took us out of the consideration box. She said that these other elements had not been pled. I had another question for you. In your reply to the motion to dismiss, I think it was – it might have been in the main motion. You had the following sentence, Most of justices' claims are not legally cognizable. Thus, amendment would be futile and dismissal should be with prejudice. That sort of is one of those negative pregnants. If most of them are not legally cognizable, some of them must be. And so I didn't know what that's – what we're supposed to take from that. What you should take and what was intended by it was that certain of these claims were alleged. What we did is we assumed that the facts were true. That didn't state a viable claim. Other claims were viable claims, but they didn't allege the facts to meet the claim. I think that was the intention of that statement. How do you know they were viable claims, then? Well, claims like alter ego are viable claims. You have to allege facts to state a claim. Here, what plaintiff alleged were facts that simply didn't state a claim for – it didn't state a claim for breach of contract, because what the plaintiff was alleging was that these modifications were entirely unenforceable for lack of consideration. Let me ask you a different question directed to count two. First, it's just a general question of law. So I understand that your contract is we can terminate for any reason or no reason. I mean, that's the words in the contract. Correct. Does that insulate someone who has signed such a contract and then terminates it, does that insulate the terminating party from a suit for bad faith, breach of the covenant of good faith and fair dealing under Arizona law? It does. So there's no – so once somebody signed that, there can be an outrageous breach of what would otherwise exist as a covenant of good faith and fair dealing? Well, I think as a public policy matter, Arizona law would not permit someone to terminate a contract on account of someone's race, for example. But when the contracting party, the subcontractor, could not claim, listen, you agreed that you would only terminate me if there were changed circumstances or for some other reason. Those kind of conditions would not be imposed. No, you're down into the weeds. We can get there in a moment. Okay. But for the moment, I'm just asking the general proposition, does the contract that says I can terminate for any reason or no reason mean that that has automatically done away with a cause of action for breach of a covenant of good faith and fair dealing? It does in this case. And do you have a case that says that? There's no case that has dealt with this in this context. It's context-specific. It's context-specific under Arizona law. So I'll treat it for now, then, as an unresolved question, even from your perspective under Arizona law. Well, it is an unresolved. It is an unresolved question, but the mileposts are there to show. Okay. Given that, let me assume, then, for purposes of my next question, that the contract that says I can terminate for any or no reason does not eliminate a cause of action for breach of contract, for breach of covenant of good faith and fair dealing. I don't you don't have to accept that, but I'm positing that that is Arizona law. Why doesn't Count II allege that, given that the first sentence of Count II incorporates everything that's come before, and that the very first paragraph in the complaint alleges bad faith? If all you read was the first paragraph, you might be able to read that into this case, but when you read the statement of the claim and when you read the argument that was presented to Judge Bolton, the argument was that the termination clause renders the contract illusory. Therefore, it's invalid and should be severed. There was not a hint of an argument that what happened here was a wrongful invocation of the termination clause. The entire argument at every stage of this case, pleading argument, until we get to the appeal, is that this was an invalid, severable provision because termination was made in reliance on an invalid provision that had to be severed. The termination was unlawful. That was the claim that was pled. That was the claim that was argued. It was not raised until the appeal. Well, I don't know. I mean, again, I have to say that if I were drafting this complaint myself, knowing what I now know, and I suspect your adversary were he to redraft the complaint, would have stated more clearly that he's trying to allege, among other things, a breach of the covenant of good faith and fair dealing. But if I read it charitably, I think I can see in there a claim for bad faith breach. Well, you could only read it charitably if you ignored the argument to the trial court, because if you read the argument to the trial court, the claim was not made. It's not even a claim. I mean, here it is in paragraph 1. And who are seeking to pursue injunctive relief for covered damages standing for a defendant's systematic and bad faith breaches of the MSAs. It does say that, Your Honor, but read the allegations under count one. I mean, count two. No, I read them. It doesn't say anything about wrongfully invoking the termination provision. Well, but if you read the earlier stuff, it basically is alleging, you know what? These guys from the very beginning just had this practice of doing that. So if we're looking at not just paragraph one, but all the introductory material before you get to the specific counts, it tells a story of this has been the practice of this company, and it does it in bad faith. But critically, Your Honor, it never challenges that, because the plaintiffs specifically agreed to all of those contract rights. They agreed to them. They knew that they had agreed to them, and they needed to get out of them because they were fatal. So they came up with a theory that says let's read that termination provision out of the contract by saying it's illusory. That's what happened. Thank you, counsel. Mr. Lee, you have some rebuttal time remaining. Thank you, Your Honor. Your Honor, first, as to the whole issue of how it was pledged specifically in paragraph 125, which states of the complaint, I'm sorry, the plaintiff and class members completed their work under the MSAs, it's our position, Your Honor, that you have to read that in the context and with the light most favorable to the plaintiff. And that's exactly what the amendment, if we were permitted to amend this complaint, would clarify. We need to focus on the fact that there's an issue of timing. There's work that was completed, and the amount due was known, liquidated, and then there's an issue of work that was yet to be completed. And the fact that there's just one sentence in there that says work was, in fact, completed on the MSA has to be read in the light most favorable to the plaintiff and looking at the entire context of the complaint. Just seizing upon that one phrase doesn't mean that the plaintiff can plead themselves out of a claim. The other issue that has been raised is the fact that the defendants, you know, could have put, there's potentially consideration here because the defendants forbore their right to terminate the contract, and therefore that was consideration that could somehow support the price modification of the work that claims had already completed. Our position on that, Your Honor, is potentially, yes, that might be the case. However, that is a fact inquiry. The whole issue of consideration is one thing to consider. It also has to be bargained for. So that requires a district court or a finder of facts to delve into the facts and discover, you know, what were the terms of the understanding? What was the understanding between the parties? What was bargained for? So to dismiss this complaint at this stage, at the pleading stage, without digging into those facts is improper. As to the issue of Count II and the breach of good faith, it's plaintiff's position that the defendants are not insulated from a breach of the covenant of good faith. Counsel, I don't actually read Count II as alleging bad faith. I mean, obviously, Judge Fletcher, at least for the purpose of his questions, has, but it seems clear to me reading it that what you are asking for is severance of paragraph 7.1, and that you're asking for a declaration that it's void and unenforceable. And that that's the specific thing you're getting at in Count II, and even the title of it isn't really about the covenant of good faith. And it seems to me that on appeal you're not really even trying to defend that theory anymore, that what you're asking for is a new theory. And if that's – if it is a new theory, why should we permit that to happen at this point? Well, Your Honor, we don't believe that it is a new theory. We'll once again have to admit that it could have definitely been pledged in a manner that was more clear. However, it was actually pledged, meaning the claim of bad faith. Once again, referring to paragraph number 1, which clearly calls out the term of – explains that this – that bad faith is an issue here, incorporating into Count II, but by incorporation in paragraph 136, that does incorporate that concept into this complaint. Furthermore, in the paragraphs leading up to this, there is an extensive explanation by the plaintiffs, talking about how the defendants operated, how they entered into these contracts with the intention of never really offering – honoring the price that was agreed upon, and how part of their business model was to constantly use the threat of termination against subcontractors, such as the plaintiff, in order to gain leverage and bargaining power. When you take all of those concepts and the description as set forth in the complaint, we believe reading that in total and, as I said before, with a leg most favorable to the plaintiffs, that does sufficiently put the defendants on notice of a claim of bad faith. Unless there are any more questions from the Court, I'll submit them. I don't believe so. Thank you very much. The case just argued is submitted, and we appreciate your arguments today.
judges: Graber, Fletcher, Paez